**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| SHARON STEPHENSON, | ) No. SA CV 14-36-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 9, 2014, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 28, 2014, and March 3, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 27, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## <u>BACKGROUND</u>

Plaintiff was born on September 4, 1953. [Administrative Record ("AR") at 136, 253.] She has some college education and past relevant work experience as, among other things, a receptionist and an administrative clerk. [AR at 135-36, 291, 296.]

On August 19, 2009, plaintiff filed an application for Disability Insurance Benefits. [AR at 103, 253-54.] Plaintiff alleged disability beginning on July 1, 2008. [AR at 103, 253.] After the application was denied initially and upon reconsideration, she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 103, 146-49, 151-55, 157-58.] A hearing was held on October 21, 2010, at which time plaintiff appeared represented by an attorney and testified on her own behalf. [AR at 20-50, 103.] A vocational expert ("VE") also testified. [AR at 24-39, 103.] On November 22, 2010, the ALJ issued a decision concluding that plaintiff was not under a disability from July 1, 2008, through the date of the decision. [AR at 103-11.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 189-91.] On March 23, 2012, the Appeals Council vacated the ALJ's decision and remanded the matter for another hearing and a new decision. [AR at 117-19.] Specifically, the Appeals Council found that although the ALJ determined that plaintiff had moderate difficulty maintaining social functioning, as well as moderate difficulty maintaining concentration, persistence, or pace, the assessed residual functional capacity ("RFC") did not include any social limitations. [AR at 117-18.] The Appeals Council also found that the decision was signed by ALJ Helen E. Hesse on behalf of ALJ Milan M. Dostal without the required authorization. [AR at 118.]

On October 15, 2012, a second hearing was held before a different ALJ. [AR at 53-91.] Plaintiff, represented by an attorney, appeared and testified on her own behalf. [AR at 55-77.] A medical expert ("ME") and a VE also testified. [AR at 77-90.] On December 6, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from July 1, 2008, through the date of the decision. [AR at 124-37.] Plaintiff requested review of the ALJ's decision by the

Appeals Council. [AR at 18-19.]  On November 7, 2013, the Appeals Council denied review.  [AR at 1-7.]  This action followed.


### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).   When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the

4

claimant is not disabled, because she can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, July 1, 2008.[1]  [AR at 126.]  At step two, the ALJ concluded that plaintiff has the severe impairments of bipolar disorder, bifrontal encephalopathy, anxiety, borderline personality disorder, history of alcohol dependence, and status post-transient ischemic attack.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[2]  [AR at 128.]  The ALJ further found that plaintiff retained the RFC[3] to perform a full range of work at all exertional levels but with the following non-exertional limitations:  frequent fine and gross manipulation; moderately complex tasks (SVP 4 or less);[4] no public contact; only occasional

---

[1]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  [AR at 126.]

[2]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[4]   SVP (Specific Vocational Preparation) is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles ("DOT"), app. C.  An SVP of 4 indicates that the position would require from 3 to 6 months of training.  Id.  "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings."  Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  Thus, in stating that plaintiff's ability "to perform tasks of all complexity and detail (continued...)

1   interaction with co-workers and supervisors; no jobs requiring team participation; work should be

2   in an object-oriented setting; only occasional changes in the work setting; no jobs in which the

3   safety of others would be compromised or requiring hyper-vigilance; no ladders, ropes, or

4   scaffolds; no work at heights; and no work requiring balance or being around moving and

5   dangerous equipment.  [AR at 131.]  At step four, based on plaintiff's RFC and the VE's testimony,

6   the ALJ concluded that plaintiff is unable to perform her past relevant work as a receptionist, sales

7   clerk, and administrative assistant.   [AR at 135-36.]   At step five, based on plaintiff's age,

8   education, work experience, and RFC, the ALJ found that there are jobs existing in significant

9   numbers in the national economy that plaintiff could perform, including work as a laundry worker

10  and a factory helper.  [AR at 136-37.]  Accordingly, the ALJ determined that plaintiff was not

11  disabled at any time from July 1, 2008, through the date of the decision.  [AR at 137.]

12

13                                                  **V.**

14                                    **THE ALJ'S DECISION**

15          Plaintiff contends that the ALJ erred when she gave reduced or no weight to the mental

16  function assessments of treating psychiatrist Sayeh Beheshti, M.D.; examining psychologist G.A.

17  Elmer Griffin, Ph.D.; and state agency review psychiatrists M. Morgan, M.D., and G. Johnson,

18  MD.[5]  [Joint Stipulation ("JS") at 7.]  As set forth herein, the Court agrees with plaintiff, in part, and

19  remands the matter for further proceedings.

20

21

22

    _____

23          [4](...continued)
    is limited to only being capable of moderately complex tasks of SVP 4 or less . . . and [she] is not
24  limited to only simple tasks because her memory is average . . . " [AR at 133], the ALJ appears
    to improperly conflate two separate vocational considerations. Id. at 984 (the SVP level in a DOT
25  listing does not address whether a job entails only simple, repetitive tasks).

26          [5]     For ease of reference, and in order to provide a succinct summary of the opinions of these
27  four doctors, the Court has prepared a chart setting forth their ratings in the various categories of
    their mental function assessments.  [See Attach. A; see also supra note 6.]

28

**A.     EVALUATION OF MEDICAL EVIDENCE**

**1.     Legal Standard**

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

In this case, the ALJ stated that she gave "little weight" to the opinions of plaintiff's treating psychiatrist and examining psychologist, and "less weight" to the opinions of the two state agency psychiatrists.  [AR at 130, 131, 134.]

**2.     Dr. Beheshti**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions in the September 4, 2009, Psychiatric/Psychological Impairment Questionnaire

("Questionnaire") completed by Dr. Beheshti, her treating psychiatrist at Orange County Behavioral Health Services, where plaintiff had been receiving mental health treatment since March 2008. [JS at 9; AR at 414-21.] Specifically, plaintiff contends that the ALJ discounted Dr. Beheshti's finding of moderate limitations relating to memory, concentration, and persistence for reasons that were not legally sufficient. [JS at 12-13.]

In her report, Dr. Beheshti diagnosed plaintiff with bipolar disorder. [AR at 414.] She found plaintiff moderately limited ("significantly affects but does not totally preclude the individual's ability to perform the activity")[6] in her ability to remember work-like procedures; to understand, remember, and carry out one or two-step instructions; to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions; to complete a normal workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in the work setting; and to travel to unfamiliar places or use public transportation. [AR at 416, 417-19; see also Attach. A, nos. 1-7, 9-11, 17, 19.] Dr. Beheshti found plaintiff markedly limited ("effectively precludes the individual from performing the activity in a meaningful manner") in her ability to accept instructions

---

[6]    The Questionnaire provides five ratings for twenty different work-related activities. These ratings include: (1) "No evidence of limitation in this capacity," (2) "Mildly Limited (does not significantly affect the individual's ability to perform the activity)," (3) "Moderately limited (significantly affects but does not totally preclude the individual's ability to perform the activity)," (4) "Markedly limited (effectively precludes the individual from performing the activity in a meaningful manner)," and (5) "Not ratable on available evidence." [AR at 416.] The Court notes that, in contrast, the Mental Residual Functional Capacity Assessments completed by Dr. Johnson and Dr. Morgan provide the following ratings: (1) "Not Significantly Limited," (2) "Moderately Limited," (3) "Markedly Limited," (4) "No Evidence of Limitation in this Category," and (5) "Not Ratable on Available Evidence." [See, e.g., AR at 454, 509.] Dr. Griffin's report, which lists only nine work-related activities, uses the categories: (1) "None," (2) "Slight," (3) "Moderate," (4) "Marked," and (5) "Extreme." [AR at 674.] No mention is made by the ALJ of whether the categories and/or ratings used by the various doctors have the same meanings. Nor do the parties address this issue in the Joint Stipulation.

1    and respond appropriately to criticism from supervisors;[7] and to set realistic goals or make plans

2    independently.  [AR at 416, 418-19; Attach. A, nos. 14, 20.]

3          The ALJ gave "little weight" to the opinions of Dr. Beheshti:

4          [T]he opinions given by Dr. Beheshti are not consistent with the treatment records
            in the file.  The treatment records found in Exhibits 1F; 9F; 22F; and 32F show the
5          claimant is tolerating her [medications] well without side effects, that she is able to
            control her mood and irritability surrounding her daughter's life choices (which is
6          noted as a significant stressor for her), and that she does have some memory
            problems but that the memory problems are also likely related to her physical
7          impairments.  As such, the treatment records from Dr. Beheshti do not support the
            level of limitation indicated in the questionnaire.

8

9    [AR at 130.]

10         Preliminarily, the Court agrees with plaintiff that the ALJ's finding that plaintiff "does have

11   some memory problems but that the memory problems are also likely related to her physical

12   impairments" [JS at 13 (citing AR at 130)], is not a legally sufficient reason for discounting Dr.

13   Beheshti's opinion regarding plaintiff's memory problems for purposes of the ALJ's RFC

14   determination.  Even if the ALJ properly discounted this finding in assessing plaintiff's paragraph

15   B functional criteria [see, e.g., AR at 128 (ALJ stated that "[t]o qualify as a restriction or limitation

16   in the four paragraph B functional areas, the alleged limitation or restriction must be caused solely

17   by the mental impairments while discounting any additional limitation or restriction caused by the

18   alleged physical impairments")], the ALJ failed to explain how whether plaintiff's memory problems

19   result from mental impairments or, as the ALJ herself had previously noted, from "side effects of

20   her bifrontal encephalopathy and transient ischemic attack" [AR at 132], in any way detracts from

21   the fact, acknowledged by the ALJ [see, e.g., AR at 130, 132], that plaintiff indeed experiences

22   memory problems.  Nor did the ALJ adequately explain her determination to credit consulting

23   psychologist Dr. Griffin's finding regarding plaintiff's "average memory" over that of treating

24   psychiatrist Dr. Beheshti despite finding that both of their opinions were entitled to "little weight."

25

26         [7]   Dr. Morgan also found plaintiff markedly limited in her ability to accept instructions and
      respond appropriately to criticism from supervisors [AR at 455; Attach. A, no. 14], and Dr. Griffin
27   similarly found plaintiff was markedly limited in her ability to "[i]nteract appropriately with
      supervisor(s)."  [AR at 674; Attach. A, no. 14].  In contrast, Dr. Johnson found no limitation in this
28   ability.  [AR at 510; Attach. A, no. 14.]

[See AR at 133 (finding that plaintiff is "not limited to only simple tasks because her memory [as determined by Dr. Griffin] is average."); see also discussion supra Part V.A.3.] Nor does the ALJ account for Dr. Griffin's finding that despite his test results showing "average" memory, he also finds plaintiff slightly limited in her ability to understand and remember complex, and detailed, instructions.  [AR at 674.]

In fact, a review of the record shows that with the exception of Dr. Griffin, who found a "slight" limitation in plaintiff's ability to understand and remember complex, and detailed, instructions[8] [AR at 674; Attach. A, nos. 3, B], each of the other three psychiatrists in question found plaintiff to be moderately limited in her ability to understand, remember, and carry out detailed instructions [Attach. A, nos. 3, 5]; and, Dr. Morgan agreed with Dr. Beheshti's finding that plaintiff also was moderately limited in her ability to understand, remember, and carry out even one or two-step instructions.  [Attach. A, nos. 2, 4; see also AR at 454.]  "Moderately limited" is defined in the form completed by Dr. Beheshti as "significantly affects but *does not totally preclude* the individual's ability to perform the activity."  [AR at 416 (emphasis added); see also supra note 6.] There is no definition for the term "moderately limited" in form SSA-4743-SUP that Dr. Morgan and Dr. Johnson used, but the Agency's Program Operations Manual System ("POMS") DI 24510.063, "Completion of Section I of SSA-4734-F4-SUP," states that the term "moderately limited" means that the "individual's capacity to perform the activity is impaired," and such a finding requires the physician to indicate the degree and extent of the limitation.  See Howard v. Astrue, 2010 WL 4220407, at *4 n.3 (C.D. Cal. Oct. 19, 2010) (citation omitted).  Drs. Johnson and Morgan both indicated that as a result of their assessed limitations, plaintiff has the capacity to perform simple repetitive work.  [AR at 456, 511.]

The limitation assessed by Drs. Johnson and Morgan to simple repetitive work appears to be consistent with both of those doctors' assessments, as well as with Dr. Beheshti's assessment,

---

[8]   Dr. Griffin's form included only the following relevant categories:  (1) understand and remember short, simple instructions; (2) carry out short, simple instructions; (3) understand and remember complex instructions; and (4) understand and remember detailed instructions.  [AR at 674.]  As previously noted, Dr. Griffin provided no further description or definition for his findings.

that plaintiff is moderately limited in understanding, remembering, and carrying out detailed instructions and, therefore, should be limited at least to simple repetitive tasks. Drs. Beheshti and Morgan also found plaintiff moderately limited in her ability to understand, remember, and carry out one or two-step instructions, which might indicate a limitation to a more restrictive SVP level of work. [Attach. A, nos. 2, 4.] The ALJ, however, who gave limited or less weight to all four of these doctors' opinions, including plaintiff's treating psychiatrist, provided no specific and legitimate reason to discount the three psychiatrists' opinions regarding plaintiff's limitations in her ability to understand, remember, and carry out one or two-step instructions, or detailed instructions, in favor of the contradictory opinion of Dr. Griffin who assessed plaintiff on only one occasion and who, despite finding plaintiff's memory to be "average," also found "slight" limitation in plaintiff's ability to understand and remember complex, and detailed instructions. "Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, [s]he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citation omitted). Based on the foregoing, it appears that this is what the ALJ did. Remand is warranted.

### 3. Dr. Griffin

On April 29, 2011, Dr. Griffin performed a consultative psychological examination and evaluation of plaintiff. [AR at 668-75.] He also reviewed the treatment notes from Orange County Behavioral Health Services, and other treating records and notes from March 9, 2010, to August 23, 2010, and from October 20, 2009. [AR at 668-69.]

Dr. Griffin administered three standardized tests: the Millon Clinical Multiaxial Inventory-III ("MCMI-III"), the Wechsler Memory Scale-III (Abbreviated) ("WMS-III"), and the Rey-II, a test for "gross malingering." [AR at 672.] Based on plaintiff's scores on the WMS-III, Dr. Griffin found that the results showed her "memory functioning, including attention and concentration," to be in the "average range." [AR at 673.] Dr. Griffin provided no explanation regarding the nature of the memory tests, or the meaning of the results (other than later finding no limitation in plaintiff's ability

1  to understand, remember, and carry out short, simple instructions, and slight limitation in her ability

2  to understand and remember complex, and detailed, instructions).  [AR at 674.]  Dr. Griffin also

3  found that plaintiff exhibited irritable hypersensitivity to criticism, low frustration tolerance, and a

4  high degree of emotional lability and impulsive angry outbursts alternating with recurring

5  depressive complaints and sulking, such that plaintiff would have unstable relationships and

6  unpredictable behavior.  [AR at 672-73.]

7        In his "Ability to Work" form, Dr. Griffin assessed "marked"[9] limitation with respect to

8  plaintiff's ability to:  interact appropriately with the general public; interact appropriately with

9  supervisors; interact appropriately with coworkers; respond appropriately to changes in a routine

10  work setting; and respond appropriately to work pressures in a usual work setting.  [AR at 674.]

11  Dr. Griffin found slight limitation in plaintiff's ability to understand and remember complex, and

12  detailed instructions,[10] and no limitation in her ability to understand, remember, and carry out

13  short, simple instructions.  [Id.]

14        Dr. Griffin concluded that the results of his various assessments and evaluation of plaintiff

15  indicated a diagnosis of Borderline Personality Disorder, which, in his judgment, incorporated the

16  "affective instability described by the claimant and the clinical records in terms of 'Bipolar

17  Disorder,' as well as her reported history of substance abuse, which can be included among the

18  diagnostic criteria for Borderline Personality Disorder."  [AR at 673-74.]

19        The ALJ stated that she gave "little weight" to the opinions of Dr. Griffin:[11]

20        The result of [Dr. Griffin's] examination was a diagnosis of a personality disorder and
         the opinion that [plaintiff] would have marked limitation in her ability to interact with
21        the public, coworkers and supervisors.  However, the claimant demonstrated good

22  _____

23     [9]   Dr. Griffin does not define the terms "slight," "moderate," "marked," or "extreme," as used
      in his report.  [See, e.g., AR at 668-75; see also supra note 6.]

24     [10]   Dr. Griffin did not assess plaintiff's ability to carry out complex, or detailed instructions.  [AR
25     at 674.]

26     [11]   As previously discussed, notwithstanding the "little weight" she purportedly gave to Dr.
      Griffin's opinions, the ALJ nevertheless relied on Dr. Griffin's finding regarding plaintiff's "average"
27     memory, attention, and concentration to discount the opinion of Dr. Beheshti regarding plaintiff's
      moderate limitations in these areas, and Dr. Johnson's and Dr. Morgan's opinions that plaintiff is
28     limited to simple repetitive tasks.  [AR at 134.]

1    social capabilities during that same examination, as she was able to interact with the examiner without significant difficulty.  She demonstrated this same capability at the consultative internal medicine examination and at the hearing office when she presented for this hearing and the previous hearing as there was no record of any incident or event during those visits secondary to her inability to deal appropriately with others.  The claimant does have some difficulty in this area.  However, she has also demonstrated good capability interacting with others with whom she had no prior contact.  Thus, the undersigned find[s] the claimant has no more than moderate difficulties in social functioning.

. . . .

. . . Dr. Griffin opined the claimant suffered from a personality disorder leading to marked limitations in interacting appropriately with coworkers, supervisors, the general public, responding to [changes in] routine work settings, and work pressures.  In addition, Dr. Griffin opined the claimant would only have slight limitation in remembering complex and detailed instructions.  While the opinions of Dr. Griffin may be consistent with the examination performed, the full medical evidence of record shows the claimant also suffers from a bipolar disorder in addition to the diagnosed personality disorder and that she is more capable regarding her social capabilities than opined by Dr. Griffin.  Thus, . . . his opinion is lacking and not fully consistent with the objective medical evidence of record.

[AR at 129, 131 (citations omitted).]  The ALJ also found that because of plaintiff's "noted difficulty interacting with others that led to the diagnosis of borderline personality disorder from Dr. Griffin," plaintiff "does need to limit her contact with others as follows:  no public contact, only occasional interaction with coworkers and supervisors, and no jobs requiring team participation."  [AR at 133.]

### a.     Dr. Griffin's Diagnosis of Borderline Personality Disorder

Plaintiff argues that the ALJ's one articulated rationale for giving less weight to Dr. Griffin's opinions -- i.e., Dr. Griffin's report is inconsistent with the objective medical evidence because he diagnosed plaintiff with a personality disorder despite the full evidence of record that shows she also suffers from a bipolar disorder -- misapprehended Dr. Griffin's report.  [JS at 14 (citing AR at 131).]  She argues that simply because Dr. Griffin disagreed with the bipolar diagnosis does not mean that he was not aware of that diagnosis.  [JS at 14-15.]  A review of the report shows that Dr. Griffin did take plaintiff's bipolar diagnosis into account in preparing his report, finding instead that plaintiff's "affective instability" and the "clinical records" led him to believe that her primary diagnosis is Borderline Personality Disorder.  [AR at 673-74.]  It is also clear that the ALJ accepted Dr. Griffin's additional diagnosis, as she included it as a severe impairment.  [AR at 126.]

Based on the foregoing, the Court agrees with plaintiff that Dr. Griffin's diagnosis -- which appears simply to be a difference of medical opinion, and which was accepted by the ALJ as an additional impairment -- is not, therefore, a specific and legitimate reason to discredit Dr. Griffin's other findings regarding plaintiff's social functioning, responding to changes in work settings, and work pressure.

### b.   Marked Limitations in Interactions with Supervisors

Plaintiff also complains that the ALJ inferred that plaintiff is "more capable regarding her social capabilities than opined by Dr. Griffin" [JS at 15 (citing AR at 131)] and, while the ALJ deferred to Dr. Griffin's restriction to interactions with the general public, she adopted "only lesser limitations with regard to [plaintiff's] ability to deal with coworkers and supervisors and with workplace changes: i.e., [finding] that she could perform those tasks 'occasionally.'" [JS at 14 (citing AR at 131, 674).] The Court finds this argument persuasive.

As with Dr. Beheshti's (and Dr. Morgan's) opinion that plaintiff had marked limitations in her ability to accept instructions and respond appropriately to criticism from supervisors [Attach. A, no. 14], Dr. Griffin also found plaintiff had marked limitations in her ability to interact appropriately with supervisors, as well as with coworkers.  [AR at 674; Attach. A, nos. 14, 15, C.]  The ALJ accepted Dr. Griffin's finding that plaintiff was markedly limited in her ability to interact appropriately with the general public, by precluding public contact in the RFC determination, despite the fact that Drs. Beheshti and Morgan found mild or no limitations respectively, and Dr. Johnson found only moderate limitations in this functional category.  [AR at 131; Attach. A, no. 12.]  In contrast, Dr. Griffin, as well as Drs. Beheshti and Morgan, all found plaintiff markedly limited in her ability to interact with supervisors.  [Attach. A, no. 14, C.]  In discussing her finding that plaintiff was no more than moderately limited in social interactions, the ALJ stated:

> [T]he claimant demonstrated good social capabilities during [Dr. Griffin's] examination, as she was able to interact with the examiner without significant difficulty.  She demonstrated this same capability at the consultative internal medicine examination and at the hearing office when she presented for this hearing and the previous hearing as there was no record of any incident or event during those visits secondary to her inability to deal appropriately with others.  The claimant

14

1   . . . has also demonstrated good capability interacting with others with whom she
2   had no prior contact.

3   [AR at 129.]  The ALJ then went on to note that "[plaintiff] does need to limit her contact with

4   others as follows:  no public contact, only occasional interaction with supervisors, and no jobs

5   requiring team participation.  This is because of her noted difficulty interacting with others that led

6   to the diagnosis of a borderline personality disorder from Dr. Griffin."  [AR at 133.]  Thus, the ALJ

7   discredited Dr. Griffin's findings because plaintiff exhibited good social capabilities, while at the

8   same time crediting his findings because of plaintiff's "noted difficulty interacting with others."

9   These reasons seem, at best, to be contradictory and, therefore, do not constitute a specific and

10  legitimate reason for discrediting Dr. Griffin's findings regarding plaintiff's social functioning.

11      Moreover, it is not clear why, based on the above reasoning, the ALJ would credit Dr.

12  Griffin's marked limitation regarding plaintiff's inability to interact appropriately with the general

13  public, and yet inexplicably not credit his identical finding regarding plaintiff's marked limitation in

14  her ability to interact appropriately with supervisors.  This is especially puzzling because, as

15  mentioned, no doctor other than Dr. Griffin found plaintiff more than moderately limited in her

16  interactions with the general public -- yet the ALJ precluded interactions with the general public;

17  while all doctors except Dr. Johnson found plaintiff markedly limited with respect to her interactions

18  with supervisors -- yet the RFC nevertheless provided for occasional contact with supervisors.[12]

19  Moreover, although the ALJ attempted to support her findings at least in part by noting that plaintiff

20  "has also demonstrated good capability interacting with others with whom she had no prior

21  contact" [AR at 129], as noted by Dr. Griffin in his report:  "[plaintiff] may succeed in making a good

22  initial impression, but longer acquaintance may bring out her moodiness and unreliability," and she

23  exhibits "irritable hypersensitivity to criticism [and] low frustration tolerance."  [AR at 672].

24

25

_____

26      [12]  As discussed below, the Court finds that the ALJ seems to have selectively relied on
27  various portions of Dr. Griffin's opinions, i.e., plaintiff is markedly limited in her ability to interact
    appropriately with the general public, while selectively discounting or rejecting others, i.e., plaintiff
28  is markedly limited in her ability to interact appropriately with supervisors.  [See discussion supra
    part V.B.]

Based on the foregoing, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting the findings of Dr. Griffin, as well as the findings of Dr. Beheshti and Dr. Morgan, each of whom found plaintiff to be "*markedly* limited" in her ability to interact appropriately with supervisors.[13]   Additionally, the ALJ's decision appears to selectively rely on some portions of Dr. Griffin's (as well as the other doctors') opinions, while completely rejecting other portions, without any sort of consistency or legally sufficient explanation.  Remand is warranted on this issue as well.

### c.    Work Related Pressures

Plaintiff also alleges that the ALJ did not credit any aspect of Dr. Griffin's opinion with regard to plaintiff's marked limitation in her ability to respond to work pressures.  [JS at 16.]  She notes that Dr. Beheshti also found plaintiff incapable of tolerating any more than a low stress work environment[14] "[y]et the ALJ failed entirely to mention the issue, much less give a specific and legitimate reason for disregarding that aspect of both Dr. Griffin's and Dr. Beheshti's reports."  [Id. (citations omitted).]

A review of the ALJ's decision, however, shows that she did not *entirely* ignore all of these particular findings.  In fact, the ALJ specifically noted that plaintiff should work in an object-oriented setting to negate potential distractions, "should only be subject to occasional changes in her work setting, to also negate any distractions or difficulty moving from one task to another," and "should avoid work where the safety of others would be compromised or ones involving hyper-vigilance." [AR at 133.]  The ALJ concluded that "[t]hese [RFC] limitations are in place to help the claimant stay focused but not too focused, as too much focus will lead to stress that will lead to symptom

---

[13]    Dr. Griffin's category differed slightly as he found plaintiff had "marked" limitations in her ability to "interact appropriately with supervisor(s)."  [AR at 674.]  The Court does not find this to be a substantive difference for purposes of its analysis herein.

[14]    Dr. Morgan also found plaintiff moderately limited in her ability to respond appropriately to changes in the work setting.  [AR at 455; Attach. A, no. 17.]

flare-ups from buil[t]-up stress."  [Id.]   Thus, plaintiff's argument that the ALJ "completely" disregarded Dr. Griffin's and Dr. Beheshti's findings regarding workplace stress is unavailing.

However, because the matter is being remanded, the ALJ should also specifically reconsider plaintiff's limitations relating to her ability to respond to work pressures or tolerate anything more than a low-stress work environment as well as her ability to respond appropriately to changes in the work environment.

### 4.    Dr. Morgan and Dr. Johnson

On December 11, 2009, Dr. Morgan, a state agency reviewing psychiatrist, assessed plaintiff's residual mental function based on a review of the medical records to that date.  [AR at 454-56.]  Dr. Morgan found moderate limitations in plaintiff's ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions, as well as detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a work setting; and travel in unfamiliar places or use public transportation.  [AR at 454-55; Attach. A, nos. 1-7, 9-11, 17, 19.]  Dr. Morgan noted marked limitations in plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors; and to set realistic goals or make plans independently of others.  [AR at 455; Attach. A, nos. 14, 20.]  Dr. Morgan concluded that plaintiff is able to "complete a normal workday/workweek, performing simple repetitive tasks, in a setting that involves limited contact with others."  [AR at 456.]

On February 24, 2010, Dr. Johnson, a state agency reviewing psychiatrist, also assessed plaintiff's mental function.  [AR at 509-11.]  Dr. Johnson found moderate limitations in plaintiff's ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday and workweek without interruptions from

psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in a work setting.  [AR at 509-10; Attach. A, nos. 3, 5-7, 11-12, 17.]  Dr. Johnson concluded that plaintiff has the capacity to understand, remember, and carry out non-public simple repetitive tasks in a regular workday or workweek.  [AR at 511.]

The ALJ gave "great weight" to the opinion of Dr. Morgan and Dr. Johnson with respect to their paragraph B severity findings:

> Both opined the claimant would have the following paragraph B severity ratings given the presence of her bipolar disorder:  mild limitation in activities of daily living; moderate restriction in social functioning; and moderate restriction with regard to concentration, persistence or pace. . . . The severity ratings given by Drs. Morgan and Johnson (with the exception of the slight variance in the episodes of decompensation) are the same as the severity rating discussed above.  As the objective medical evidence of record supports those ratings, the undersigned gives great weight to the opinions of Drs. Morgan and Johnson.

[AR at 131.]

However, in determining plaintiff's RFC, the ALJ gave the opinions of both Dr. Morgan and Dr. Johnson "less weight," stating that their opinions were not fully consistent with the full medical evidence of record.  [AR at 134.]  Specifically, the ALJ noted that their limitation to simple repetitive tasks was "too restrictive" in light of the formal testing by Dr. Griffin, which found that plaintiff "demonstrated average memory capabilities."  [AR at 134.]

Plaintiff complains that although the ALJ gave the opinions of Dr. Johnson and Dr. Morgan "great weight," she "simply ignored" "substantial aspects of both doctors' opinions," specifically with respect to plaintiff's moderate limitations in her ability to maintain attention and concentration for extended periods, to perform activities within a schedule, to complete a normal workday, and to perform at a consistent pace.  [JS at 16-17 (citing AR at 454-56, 509-11).]

As previously noted, however, the ALJ actually gave "little weight," not "great weight," to the opinions of these doctors, primarily with respect to their findings that plaintiff should be limited to simple routine tasks.  [Compare AR at 131 with AR at 134.]  Moreover, the ALJ seems to have acknowledged that plaintiff had at least some limitations in concentration, persistence, or pace [AR at 132], and handling workplace stress.

As this matter is being remanded for reconsideration of the opinions of all of these doctors, the ALJ on remand should also reconsider the weight to be given to the opinions of Dr. Johnson and Dr. Morgan regarding plaintiff's limitation in social functioning as it relates to supervisors, and to any limitations in her abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to complete a normal workday/workweek without interruption from psychologically-based symptoms, to perform at a consistent pace, and to perform anything more than simple repetitive work.

**B.    SELECTIVE RELIANCE**

The Court agrees with the parties that the varying opinions of the four doctors make the analysis difficult in this case.  And, as discussed, although the ALJ gave all four opinions little weight, or less weight, overall the ALJ did not provide legally sufficient reasons for rejecting certain limitations, while crediting or discounting others.  It appears to the Court, therefore, that the ALJ picked those issues that would best support a finding of not disabled, for instance:  (1) crediting Dr. Griffin's uncorroborated finding that plaintiff is markedly limited in her interactions with the general public, but discounting his finding, and the corroborating findings of Drs. Beheshti and Morgan, that plaintiff is markedly limited in her ability to interact appropriately with supervisors; and (2) giving Dr. Griffin's opinions "little weight," yet using his memory function test results to discredit the other doctors' opinions on plaintiff's memory, attention, concentration, and pace, and limitation to simple repetitive work or one or two-step instructions.  This was legal error.  See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).

# VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits. Garrison v. Colvin, __ F.3d __, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).

Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met). In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of the flexibility described in Connett is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 2014 WL 3397218, at *21.

In this case, as discussed above, because the ALJ failed to provide legally sufficient reasons for rejecting or discrediting medical opinion evidence, it is not clear that if the improperly discredited evidence were credited as true the ALJ would be required to find plaintiff disabled on remand. Thus, the Court finds that there are outstanding issues that must be resolved before a final determination can be made.

1    In an effort to expedite these proceedings and to avoid any confusion or misunderstanding

2    as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First,

3    the ALJ must assess, based on the evidence of record, whether plaintiff is limited to simple

4    repetitive tasks, or to work involving one or two-step instructions, or both.  Next, the ALJ must

5    reconsider the opinions of Drs. Beheshti, Griffin, Johnson, and Morgan with respect to plaintiff's

6    limitations in her ability to accept instructions and respond appropriately to criticism from

7    supervisors, and to interact appropriately with supervisors.  In assessing the medical opinion

8    evidence of these doctors, the ALJ must explain the weight afforded to each opinion and provide

9    legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including

10   a legally sufficient explanation for crediting one doctor's opinion over any of the others.  Further,

11   the ALJ must reconsider plaintiff's limitations with respect to Dr. Griffin's finding of marked

12   limitation in plaintiff's ability to respond appropriately to work pressures in a usual work setting, and

13   Dr. Beheshti's related finding that plaintiff is capable of low work stress only.  In light of the

14   foregoing, the ALJ shall reassess plaintiff's RFC.  Finally, the ALJ shall determine, at step five,

15   with the assistance of a VE if necessary, whether plaintiff is capable of performing other work that

16   exists in significant numbers in the national economy.[15]

17

18

19

20

21

22

23

24

25

26

27

28   [15]   Nothing in this Opinion is intended to disturb the ALJ's step four finding that plaintiff is unable to perform her past relevant work.  [AR at 33.]

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 2, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

22

**ATTACHMENT A**

**14-0036-PLA**

| | No Evidence or Mild Limitation | Moderately Limited | Markedly Limited |
|---|---|---|---|
| **Understanding and Memory** | | | |
| (1) Ability to remember locations and work-like procedures | Johnson (None) | Beheshti Morgan | |
| (2) Ability to understand and remember one or two-step instructions | Griffin (None) Johnson (None) | Beheshti Morgan | |
| (3) Ability to understand and remember detailed instructions | Griffin (Slight) | Beheshti Johnson Morgan | |
| **Sustained Concentration & Persistence** | | | |
| (4) Ability to carry out simple one or two-step instructions | Johnson (None) Griffin (None) | Beheshti Morgan | |
| (5) Ability to carry out detailed instructions | | Beheshti Johnson Morgan | |
| (6) Ability to maintain attention and concentration for extended periods | | Beheshti Johnson Morgan | |
| (7) Ability to perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances | | Beheshti Johnson Morgan | |
| (8) Ability to sustain ordinary routine w/o supervision | Beheshti (Mild) Johnson (None) Morgan (None) | | |
| (9) Ability to work in coordination with or proximity to others w/o being distracted by them | Johnson (None) | Beheshti Morgan | |
| (10) Ability to make simple work-related decisions | Johnson (None) | Beheshti Morgan | |

| | No Evidence or Mild Limitation | Moderately Limited | Markedly Limited |
|---|---|---|---|
| (11) Ability to complete a normal workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace w/o an unreasonable number and length of rest periods | | Beheshti Johnson Morgan | |
| **Social Interactions** | | | |
| (12) Ability to interact appropriately with general public | Beheshti (Mild) Morgan (None) | Johnson | Griffin |
| (13) Ability to ask simple questions or request assistance | Beheshti (Mild) Johnson (None) Morgan (None) | | |
| (14) Ability to accept instructions and respond appropriately to criticism from supervisors | Johnson (None) | | Beheshti Griffin Morgan |
| (15) Ability to get along with co-workers or peers w/o distracting them or exhibiting behavioral extremes | Beheshti (Mild) Johnson (None) Morgan (None) | | Griffin |
| (16) Ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness | Beheshti (Mild) Johnson (None) Morgan (None) | | |
| **Adaptation** | | | |
| (17) Ability to respond appropriately to changes in the work setting | | Beheshti Johnson Morgan | Griffin |
| (18) Ability to be aware of normal hazards and take appropriate precautions | Beheshti (None) Johnson (None) Morgan (None) | | |
| (19) Ability to travel to unfamiliar places or use public transportation | Johnson (None) | Beheshti Morgan | |
| (20) Ability to set realistic goals or make plans independently | Johnson (None) | | Beheshti Morgan |

| Other Findings | |
|---|---|
| (A) "Average" memory, attention and concentration | Griffin |
| (B) Slight limitation in ability to understand and remember detailed, and complex instructions | Griffin |
| (C) Marked limitation in ability to interact appropriately with supervisors | Griffin |
| (D) Marked limitation in ability to respond appropriately to work pressures in a usual work setting | Griffin |
| (E) Capable of low work stress only | Beheshti |
| | |